1  Christopher Sproul (State Bar No. 126398)
   Stuart Wilcox (State Bar No. 327726)
2  Brian Orion (State Bar No. 239460)
   Environmental Advocates
3  5135 Anza Street
   San Francisco, California 94121
4  Telephone: (415) 533-3376
   Facsimile: (415) 358-5695
5  Email: csproul@enviroadvocates.com
   wilcox@enviroadvocates.com
6  borion@enviroadvocaters.com

7  Attorneys for Plaintiff
   ECOLOGICAL RIGHTS FOUNDATION

8
9              UNITED STATES DISTRICT COURT
           NORTHERN DISTRICT OF CALIFORNIA
10              SAN FRANCISCO DIVISION

11
12  ECOLOGICAL RIGHTS FOUNDATION, a          Civil Case No. 3:20-cv-06898-SI
    non-profit corporation,
13                                           **PLAINTIFF'S NOTICE OF MOTION**
             Plaintiff,                      **AND CROSS-MOTION FOR**
14                                           **SUMMARY**
        v.                                   **JUDGMENT/OPPOSITION TO**
15                                           **DEFENDANT'S MOTION FOR**
                                             **SUMMARY JUDGMENT**
16  UNITED STATES ENVIRONMENTAL
    PROTECTION AGENCY,                       Date/Time: February 11, 2022, at 10:00am
17                                           Courtroom: Courtroom 1, 17th Floor
             Defendant.                      Judge: Hon. Susan Illston
18
19
20
21
22
23
24
25
26
27
28

P's Cross-Motion for Summary Judgment and Opp'n to D's
Motion for Summary Judgment                                    Civil Case No. 3:20-cv-06898-SI

**TABLE OF CONTENTS**

I.      INTRODUCTION/STATEMENT OF ISSUES ..................................................1

II.     STATEMENT OF FACTS ......................................................................1

III.    LEGAL STANDARDS ..........................................................................5

IV.     STANDARD OF REVIEW .....................................................................6

V.      ARGUMENT .....................................................................................6

        A.      EPA must produce its wrongfully withheld records ..............................6

        B.      EPA fails to show foreseeable harm justifying its record withholdings ..................7

        C.      EPA improperly withheld every record at issue under FOIA Exemption 5 ..........10

                1.      EPA improperly invoked the DPP for every record in dispute even though those
                        records are neither predecisional nor deliberative  ..........................................11

                        a.      EPA improperly withholds Category 1 records under the DPP ..........11

                        b.      EPA improperly withholds Category 2 records under the DPP ..........12

                        c.      EPA improperly withholds Category 3 and 4 records under the DPP.12

                        d.      EPA improperly withholds Category 5 records under the DPP ..........13

                        e.      EPA improperly withholds Category 6 records under the DPP ..........14

                        f.      EPA improperly withholds Category 7 records under the DPP ..........15

                        g.      EPA improperly withholds Category 8 records under the DPP ..........15

                2.      EPA improperly invoked the ACP for every record at issue  ..................17

                        a.      EPA improperly withholds Category 2 records under the ACP ..........17

                        b.      EPA improperly withholds Category 3 and 4 records under the ACP 18

                        c.      EPA improperly withholds Category 5 records under the ACP ..........18

                        d.      EPA improperly withholds Category 6 records under the ACP ..........18

                        e.      EPA improperly withholds Category 7 records under the ACP ..........19

                        f.      EPA improperly withholds Category 8 records under the ACP ..........19

3.     EPA improperly invoked the AWP for hundreds of records ....................20

     a.  EPA improperly withholds Category 2 records under the AWP ........21

     b.  EPA improperly withholds Category 3 and 4 records under the AWP21

     c.  EPA improperly withholds Category 5 records under the AWP ........21

     d.  EPA improperly withholds Category 7 records under the AWP ........22

D.     Declaratory judgment should issue that EPA violated FOIA's deadlines ............22

E.     The Court should issue declaratory and injunctive relief to remedy EPA's pattern or practice of violating FOIA ................................................................................23

VI.    CONCLUSION.........................................................................................................25

**TABLE OF AUTHORITIES**

**Cases**

*ACLU of N. Cal. v. DOJ,*
        880 F.3d 473 (9th Cir. 2018) ..............................................................7, 20, 21, 22

*Animal Legal Def. Fund v. Dep't of Agric.,*
        933 F.3d 1088 (9th Cir. 2019) ...............................................................................23

*Assembly of Cal. v. U.S. Department of Commerce,*
        968 F.2d 916 (9th Cir. 2016) .................................................................................13

*Chattler v. United States,*
        No. 07- 4040, 2009 U.S. Dist. LEXIS 43304 (N.D. Cal. May 12, 2009)..........................15, 16

*Coastal States Gas Corp. v. Dep't of Energy,*
        617 F.2d 854, 863 (D.C. Cir. 1980) ...........................................................17, 18, 19

*Columbia Riverkeeper v. U.S. Army Corps of Eng'rs,*
        No. 13-01494, 2015 U.S. Dist. LEXIS 58475 (D. Or. May 5, 2015) ........................................6

*CREW v. FEC,*
        711 F.3d 180 (D.C. Cir. 2013) ...........................................................................5, 23

*Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.,*
        No. 18-2901, 2019 U.S. Dist. LEXIS 223077 (D.D.C. Dec. 31, 2019)................7, 8, 9, 10, 12

*Ctr. for Investigative Reporting v. Dep't of Interior,*
        No. 18-1599, 2020 U.S. Dist. LEXIS 61201 (D.D.C. April 7, 2020).........................................9

*Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.,*
        807 F.3d 1031, 1043 (9th Cir. 2015) ...................................................................24

*Dep't of Interior v. Klamath Water Users Protective Ass'n,*
        532 U.S. 1 (2001)...................................................................................................5

*Dep't of State v. Ray,*
        502 U.S. 164 (1991)................................................................................................6

*Dickstein Shapiro LLP v. Dep't of Defense,*
        730 F. Supp. 2d 7 (D.D.C. 2010) ............................................................................7

*DOJ v. Tax Analysts*,

    492 U.S. 136 (1989)............................................................................................5

*Dominguez v. Schwarzenegger*,

    No. 09-2306, 2010 U.S. Dist. Lexis 94549 (N.D. Cal. Aug. 25, 2010)....................11

*EcoRights v. EPA*,

    2021 U.S. Dist. LEXIS 104760 ...........................................................................11

*EcoRights v. FEMA*,

    No. 16-05254, 2017 U.S. Dist. LEXIS 197451 (N.D. Cal. Nov. 30, 2017) ..................... *passim*

*Fed. Elec. Comm'n v. Akins*,

    524 U.S. 11, 21 (1998)......................................................................................22

*Fiduccia v. DOJ*,

    185 F.3d 1035 (9th Cir. 1999) ............................................................................6

*First Resort, Inc. v. Herrera*,

    No. 11-5534, 2014 U.S. Dist. LEXIS 34077 (N.D. Cal. Mar. 10, 2014)................................15

*Fishermen's Finest Inc. v. Gutierrez*,

    No. 07-1574, 2008 U.S. Dist. LEXIS 53493 (W.D. Wash. July 15, 2008) ............................13

*Gilmore v. Dep't of Energy*,

    33 F. Supp. 2d 1189 (N.D. Cal. 1998) ................................................................22

*Greenpeace v. NMFS*,

    198 F.R.D. 540 (W.D. Wash. 2000) ...................................................................11

*Hajro v. Citizenship & Immigration Servs.*,

    811 F.3d 1086 (9th Cir. 2016) ..........................................................................23

*In re Grand Jury*,

    Nos. 21-55085, 21-55145, 2021 U.S. App. LEXIS 27420 (9th Cir. Sep. 13, 2021) .........17, 18

*In re Sealed Case*,

    121 F.3d 729 (D.C. Cir. 1997) ....................................................................11, 12

*In re Steele*,

    799 F.2d 461 (9th Cir. 1986) ..............................................................................6

*Jordan v. DOJ*,

    591 F.2d 753 (D.C. Cir. 1978) ..................................................................13

*Judicial Watch v. Dep't of Commerce*,

    375 F. Supp. 3d 93 (D.D.C. 2019) .......................................................8, 10

*Judicial Watch v. DOJ*,

    No. 17-832, 2019 U.S. Dist. LEXIS 163473 (D.D.C. Sept. 24, 2019) ....................................8

*Judicial Watch. v. DOJ*,

    No. 19-800, 2020 U.S. Dist. LEXIS 178773 (D.D.C. Sep. 29, 2020) ...........................10

*Lahr v. Nat'l Transp. Safety Bd.*,

    569 F.3d 964 (9th Cir. 2009) ..................................................................13

*Landmark Legal Found. v. EPA*,

    82 F. Supp. 3d 211 (D.D.C. 2015) .........................................................24

*Long v. IRS*,

    693 F.2d 907, 909 (9th Cir. 1982) ..........................................22, 23, 24

*Nat'l Day Laborer Org. Network v. Immigration & Customs Enf't Agency*,

    811 F. Supp. 2d 713 (S.D.N.Y. 2011) ...................................................15

*Nat'l Wildlife Fed'n v. U.S. Forest Serv.*,

    861 F.2d 1114 (9th Cir. 1988) ....................................12, 14, 15, 16

*Nightingale v. U.S. Citizenship & Immigration Servs.*,

    507 F. Supp. 3d 1193 (N.D. Cal. 2020) .................................23, 24, 25

*NLRB v. Robbins Tire & Rubber Co.*,

    437 U.S. 214 (1978) ...................................................................................5

*NLRB v. Sears, Roebuck & Co.*,

    421 U.S. 132 (1975) .................................................................................13

*NRDC v. EPA*,

    No. 17-5928, 2019 U.S. Dist. LEXIS 124353 (S.D.N.Y. July 25, 2019) .................................9

*Our Children's Earth Found. v. NMFS*,

    85 F. Supp. 3d 1074 (N.D. Cal. 2015) ...........................................13, 17

*Our Children's Earth Found. v. NMFS,*

    No. 14-1130, 2015 U.S. Dist. LEXIS 143392 (N.D. Cal. Oct. 21, 2015) ...........................24

*Pac. Fisheries, Inc. v. United States,*

    539 F.3d 1148 (9th Cir. 2008) ...........................................................................13, 14

*Pritchard v. Cnty. of Erie,*

    473 F.3d 413 (2d Cir. 2007) .........................................................................17, 19, 20

*Prop. of the People, Inc. v. OMB,*

    330 F. Supp. 3d 373 (D.D.C. 2018) ......................................................................6

*Reporters Comm. for Freedom of the Press v. Customs & Border Prot.,*

    No. 18-155, 2021 U.S. Dist. LEXIS 200240 (D.D.C. Oct. 18, 2021) .......................9

*Reporters Comm. for Freedom of the Press v. FBI,*

    No. 20-5091, 2021 U.S. App. LEXIS 19762 (D.C. Cir. July 2, 2021) ......................9

*Rosenberg v. Dep't of Defense,*

    342 F. Supp. 3d 62 (D.D.C. 2018) .......................................................................8

*S. Envtl. Law Ctr. v. CEQ,*

    507 F. Supp. 3d 694 (W.D. Va. 2020) ...................................................................7

*Sidibe v. Health,*

    No. 12-04854, 2018 U.S. Dist. LEXIS 20350 (N.D. Cal. Feb. 7, 2018) .............20, 21

*Sierra Club v. U.S. Fish & Wildlife Serv.,*

    925 F.3d 1000 (9th Cir. 2019) .............................................................................11

*Stone v. INS,*

    514 U.S. 386 (1995) ..............................................................................................9

*U.S. Fish & Wildlife Serv. v. Sierra Club,*

    141 S. Ct. 777 (2021) ......................................................................................11, 14

*United States v. Sanmina Corp. & Subsidiaries,*

    968 F.3d 1107 (9th Cir. 2020) ...................................................11, 12, 17, 18, 19

*Upjohn v. United States,*

    449 U.S. 383 (1981)....................................................................................18, 19, 20

*Wilderness Soc'y v. Dep't of the Interior,*

    344 F. Supp. 2d 1 (D.D.C. 2004) ...................................................................16

*Wilkinson v. Chao,*

    292 F. Supp. 2d 288 (D.N.H. 2003) ..............................................................20


**<u>Statutes</u>**

5 U.S.C. § 552(a)(3)(A) ...............................................................................5, 22, 25

5 U.S.C. § 552(a)(4)(B) ........................................................................................6

5 U.S.C. § 552(a)(6)(A) ......................................................................................25

5 U.S.C. § 552(a)(6)(A)(i) ...........................................................................2, 5, 22

5 U.S.C. § 552(a)(6)(C)(1) ..................................................................................25

5 U.S.C. § 552(a)(8)(A)(i) .....................................................................................6

5 U.S.C. § 552(b) ..................................................................................................5


**<u>Other Authorities</u>**

Fed. R. Civ. P. § 56(c) ..........................................................................................6

162 Cong. Rec. H3717 (2016) ...............................................................................8

S. Rep. No. 114-4 ...........................................................................................7, 8, 9

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that Plaintiff Ecological Rights Foundation ("EcoRights") hereby files this Cross-Motion for Summary Judgment ("Motion"), and related declaration and exhibits, pursuant to Rules 7 and 56 of the Federal Rules of Civil Procedure, and Local Rule 56. This Motion will come for a hearing before the Honorable Susan Illston, Senior U.S. District Judge, on February 11, 2022 at 10:00 AM, in Courtroom 1, 17th Floor, Phillip Burton Federal Building & United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102.

By this Motion, EcoRights requests that the Court (1) issue a declaratory judgment that the U.S. Environmental Protection Agency ("EPA") has (a) violated the Freedom of Information Act's ("FOIA") deadlines, (b) unlawfully withheld records not exempt from production under FOIA, and (c) has a pattern or practice of violating FOIA; and (2) order EPA to (a) promptly produce unredacted versions of the records it has unlawfully withheld and (b) desist from violating FOIA's deadlines and unlawfully withholding non-exempt records for EcoRights' FOIA requests going forward.

Date: December 17, 2021                    Respectfully submitted,

                                           _/s/ Stuart Wilcox_
                                           Stuart Wilcox
                                           Attorney for Plaintiff

**I.     INTRODUCTION/STATEMENT OF ISSUES**

Despite the fact that Defendant U.S. Environmental Protection Agency's ("EPA") final determination was due approximately two years ago for Ecological Rights Foundation's ("EcoRights") Freedom of Information Act ("FOIA") request (the "Request"), EPA still has not provided a full production of records responsive to that Request. Instead of promptly producing all non-exempt records, as FOIA requires, EPA has instead continued its heavy-handed, baseless redactions of records to which no FOIA exemption applies and/or production of which would cause EPA no foreseeable harm. Only after EcoRights challenged EPA's purportedly final production of records in this proceeding did EPA produce numerous additional records and remove wrongful redactions to over 1,300 records it had already produced. Moreover, EPA has continued to refuse to produce a significant amount of wrongfully withheld records. Furthermore, EPA's approach to EcoRights' Request is part of a larger EPA pattern of institutionalized disregard for FOIA's dictates. Through this Cross-Motion for Summary Judgment, EcoRights respectfully requests that the Court (1) issue a declaratory judgment that EPA has (a) violated FOIA's deadlines, (b) unlawfully withheld documents not exempt from production under FOIA, and (c) has a pattern or practice of violating FOIA; and (2) order EPA to (a) promptly produce unredacted versions of the records it has unlawfully withheld and (b) desist from violating FOIA's deadlines and unlawfully withholding non-exempt records for EcoRights' FOIA requests going forward.

**II.     STATEMENT OF FACTS**

EcoRights submitted the Request on October 16, 2019. The Request seeks records related to a change in policy whereby the U.S. Department of Justice ("DOJ") and EPA abandoned their longstanding practice of utilizing "supplemental environmental projects" ("SEPs") in settlements of EPA enforcement actions against state and local governments. Wilcox Dec. ¶¶ 2-3.

SEPs are voluntary projects in lieu of civil penalties, funded (and often proposed) by the violator, and designed to provide tangible environmental or public health benefits to the affected community or environment that are closely related to the violations being resolved. *Id.* ¶ 3. In other words, SEPs allow settlement funds that would otherwise be paid as civil penalties to the U.S. Treasury (where they would only become part of the federal government's general funds) to be directed to remedying the localized harm that have been caused by the entities' violations of the law. As a result, SEPs are popular virtually

1   across the board. *Id.* EPA's use of SEPs is guided by its "Supplemental Environmental Projects (SEP)

2   Policy 2015 Update" ("2015 SEP Policy"). Dkt. 30 at 2-3.

3         Against this backdrop, DOJ did what appears to be an inexplicable about face and abandoned its

4   decades-old use and approval of SEPs in settlements with state and local governments in an August 21,

5   2019 memorandum entitled "Using Supplemental Environmental Projects ("SEPs") in Settlements with

6   State and Local Governments" ("2019 SEP Memo"). *Id.* EPA is DOJ's client in these lawsuits, and the

7   records in the FOIA Request seek to determine EPA's involvement in developing the 2019 SEP Memo,

8   EPA's opinion of the 2019 SEP Memo, EPA's implementation of the 2019 SEP Memo, and the

9   reception of the 2019 SEP Memo by state and local governments and other entities, which have long

10  approved of EPA's use of SEPs in their jurisdictions. The FOIA request also sought information more

11  generally about attempts to limit SEPs from EPA and DOJ since Donald Trump took office to determine

12  the origins of this change and the bases for the earlier, less sweeping incursions on the use of SEPs

13  under the Trump Administration. *See id.* This includes two DOJ memoranda authored by former

14  Attorney General Jeff Sessions: "Prohibition on Settlement Payments to Third Parties" (June 5, 2017)

15  ("2017 Sessions Memo") and "Principles and Procedures for Civil Consent Decrees and Settlement

16  Agreements with State and Local Government Entities" (Nov. 7, 2018) ("2018 Sessions Memo")

17  (collectively "Sessions Memoranda"). *See id.* ¶ 4. DOJ has since rescinded these policies and has made

18  clear that it intends to continue using SEPs as tools to facilitate settlement and local environmental

19  remediation after environmental law violations occur. *See id.,* Exs. 14, 15.

20        EPA's deadline to issue a final determination on the Request was no later than December 27,

21  2019. *See* 5 U.S.C. § 552(a)(6)(A)(i), *see also id.* ¶¶ 5-12. However, EPA did not make even its first

22  release of responsive records until over four months later on May 12, 2020. *Id.* ¶ 13. In this production,

23  EPA withheld 14 records in full under Exemptions 5 and 7 and withheld parts of an additional 74

24  records. *Id.* EPA made its second interim release over three months later on August 19, 2020. *Id.* ¶ 14. In

25  this production, EPA withheld parts of an additional 159 records. *Id.* In its August 19, 2020 production

26  letter, EPA estimated it would complete its document production by October 15, 2020. *Id.*

27        Concerned about redactions made to date and the delay experienced thus far, EcoRights filed this

28  lawsuit on October 2, 2020, a minimum of over 9 months after EPA's missed final determination

1    deadline. *Id.* ¶ 15. EPA made its third interim release of records on October 6, 2020, withholding parts

2    of another 609 records from this production. *Id.* ¶ 16. EPA made its fourth production of records and

3    final determination on November 16, 2020, over a month after it said it would finalize production in its

4    August 19, 2020 production letter and nearly 11 months after its final determination was due. *Id.* ¶ 17.

5    EPA's final determination stated that EPA was redacting records under: FOIA Exemptions 5 (the

6    Deliberative Process Privilege ("DPP"), Attorney Client Privilege ("ACP"), and Attorney Work Product

7    Privilege ("AWP")), 6, 7(A), and 7(E). *Id.* EPA also said it was withholding 447 records in full. *Id.*

8    Finally, EPA referred 142 records to DOJ for processing. *Id.*

9         The parties subsequently conferred in an attempt to reach agreement that would obviate the need

10   for further litigation, which resulted in EPA revising its withholdings. *Id.* ¶ 18-19. On June 7 and June

11   30, 2021, EPA re-released records with 1,300 previous redactions removed. *Id.* ¶¶ 20-21. On October 5,

12   2021, EPA provided 3 more records with previous redactions removed. *Id.* ¶ 22. On October 7, 2021,

13   EcoRights agreed to narrow the issues in dispute by agreeing not to challenge certain of EPA's

14   withholdings. *Id.* ¶ 23. Finally, on November 16, 2021, the day before EPA's motion for summary

15   judgment, EPA re-released yet more records with previous redactions removed and produced additional

16   information regarding 106 EPA previously withheld under Exemption 5. *Id.* ¶ 24. The only withholdings

17   still in dispute are those EPA made under the DPP, ACP, and AWP, which EPA's motion for summary

18   judgment sorts by 8 categories. EcoRights uses those same categories here to avoid confusion.

19        Category 1 consists of 26 records relating to penalty calculations in resolved enforcement cases.

20   Dkt. 30-23 at 1-26.[1] EcoRights agreed to limit its dispute to information "that state[s] the final decision,"

21   but not "recommendation[s] and that were not later adopted." Wilcox Dec. Ex. 12. These final SEP

22   amounts are included in publicly filed consent decrees. EPA appears to have ignored EcoRights'

23   limitation, and the Court should ignore EPA arguments regarding "internal EPA deliberations,"

24   discussions of "how to calculate or adjust penalties in light of the strength of evidence in the particular

25   case and the case team's assessment of litigation risk and other penalty factors," "internal penalty

26   calculations," or other information that is not implicated for Category 1, as narrowed. *See* Dkt. 30 at 8.

27        Category 2 consists of 170 records related to settlement in resolved enforcement cases. Dkt. 30-

28   _____

[1] References to EPA's *Vaughn* index, Dkt. 30-23, are to internal pagination, not PDF pagination.

1   23 at 27-210. EcoRights agreed to limit its dispute to only recommendations that were accepted

2   concerning whether to approve the SEPs at issue. Wilcox Dec. Ex. 12. EPA again appears to have

3   ignored EcoRights' limitation and has repeatedly provided argument that relates to withheld information

4   that is not in dispute. *See id.* ¶ 43. The Court should ignore EPA's thus superfluous arguments.

5          Category 3 consists of 29 records EPA created in preparation for a meeting with DOJ to discuss

6   the 2018 Sessions Memo and its effects on SEPs. *See* Dkt. 30-23 at 211-39; Wilcox Dec. ¶ 54. These

7   records discuss the effects of the 2018 Sessions Memo on SEPs in general, EPA's 2015 SEP Policy, and

8   examples of past SEPs. Wilcox Dec. ¶¶ 49-55.

9          Category 4 consists of 32 records that relate to or are drafts of a briefing paper and talking points

10  prepared for the EPA meeting with DOJ, discussed in Category 3, where EPA and DOJ discussed the

11  2018 Sessions Memo and records related to drafting a "thank you" email message to DOJ after the

12  meeting. *See* Dkt. 30-23 at 240-71; Wilcox Dec. ¶ 54. EcoRights challenges EPA's withholding of these

13  records, which discuss the effects of the Sessions 2018 Memo on SEPs in general, EPA's 2015 SEP

14  Policy, and examples of past SEPs. Wilcox Dec. ¶¶ 61-62. Category 4 overlaps with Category 3.

15         Category 5 consists of 210 records that (1) discuss DOJ's withdrawn SEP memoranda generally

16  and/or (2) discuss the application of DOJ's withdrawn SEP memoranda to completed enforcement cases.

17  Dkt. 30-23 at 272-482. EcoRights does not challenge redactions of settlement strategy and similar

18  material in the context of specific enforcement cases and limits it dispute to the above two groups of

19  information and to final decisions about whether a SEP is allowed in a specific enforcement case.

20         Category 6 consists of 129 records that discuss DOJ's withdrawn SEP memoranda generally,

21  outside of the context of any of the completed enforcement cases. Dkt. 30-23 at 483-611.

22         Category 7 consists of 22 records relating to implementation of the withdrawn Sessions

23  Memoranda. Dkt. 30-23 at 612-34.

24         Category 8 consists of 26 records in two categories: (1) drafts and outlines of a communication

25  to Senator Tom Carper discussing completed actions and (2) email discussion of upcoming EPA

26  congressional testimony regarding completed, and now withdrawn, DOJ SEP policies. Dkt. 30-23 at

27  635-60. EcoRights limits its dispute for Category 8 to information regarding SEP policy.[2]

28  _____
    [2] EPA did not include this category of records in conferral discussions, so this limitation is new.

III.    **LEGAL STANDARDS**

FOIA's goal is to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). FOIA effectuates this purpose by providing citizens with a judicially enforceable right to secure information from the government. *EcoRights v. FEMA*, No. 16-05254, 2017 U.S. Dist. LEXIS 197451, at *7 (N.D. Cal. Nov. 30, 2017).

To ensure that the public can timely acquire current information on the government's activities, Congress mandated that agencies must issue a final determination informing the requester, *inter alia*, what requested records will be released and what will be withheld within twenty working days. 5 U.S.C. § 552(a)(6)(A)(i). FOIA further requires agencies to produce requested records "promptly." 5 U.S.C. § 552(a)(3)(A); *CREW v. FEC*, 711 F.3d 180, 188 (D.C. Cir. 2013) (prompt record production "typically would mean within days or a few weeks of a 'determination,' not months or years.").

FOIA requires that an agency release *all* requested records unless they fall under a specifically enumerated exemption. 5 U.S.C. § 552(b). "Consistent with the Act's goal of broad disclosure, these exemptions have been consistently given a narrow compass." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (citation omitted). Agencies bear the burden to prove that all withheld records are exempt from disclosure, and the Court reviews the agencies' withholding determinations *de novo. See, e.g., DOJ v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989).[3] Agencies also "must provide enough information, presented with sufficient detail, clarity, and verification, so that the requester can fairly determine what has not been produced and why, and the court can decide whether

---

[3] EPA requests undue deference by saying that its declarations are entitled to "substantial weight," and its withholdings should be deemed sufficient if "logical" or "plausible." Dkt. 30 at 7. However, EPA concedes, as it must, that the Court's review of its withholdings is *de novo. Id.* EPA relies on *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007), but there the D.C. Circuit reiterated the *de novo* standard of review and the "logical" or "plausible" discussion was limited to the national security context. *See also, e.g., Hamdan v. DOJ*, 797 F.3d 759, 769 (9th Cir. 2015) (recognizing limitation); *ACLU v. CIA*, 892 F. Supp. 2d 234, 241-42 (D.D.C. 2012); *Hall v. CIA*, 668 F. Supp. 2d 172, 188 (D.D.C. 2009); *McGehee v. DOJ*, 362 F. Supp. 3d 14, 20 (D.D.C. 2019). While *Shannahan v. IRS*, 672 F.3d 1142 (9th Cir. 2012) is not a national security case, it appears to have unintentionally imported the "substantial weight" standard from national security cases without any analysis. *See id.* (*citing Hunt v. CIA*, 981 F.2d 1116, 1118 (9th Cir. 1992)). As a result, the later, reasoned decision in *Hamdan* provides the controlling Ninth Circuit *de novo* standard for FOIA withholdings such as those at issue here—that substantial weight is afforded agency declarations in FOIA cases only in national security contexts. 797 F.3d at 769.

1    the exemptions claimed justify the nondisclosure." *Fiduccia v. DOJ*, 185 F.3d 1035, 1043 (9th Cir.

2    1999). Additionally, the FOIA Improvement Act of 2016 ("FIA") further tightened these stringent

3    standards with the new requirement that agencies must show not only that withheld records fall within

4    an exemption, but that disclosure would harm an interest protected by an exemption—what is referred to

5    as the "foreseeable harm standard." 5 U.S.C. § 552(a)(8)(A)(i).

6    **IV.**    **STANDARD OF REVIEW**

7        Summary judgment is appropriate "if … there is no genuine issue as to any material fact and …

8    the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. § 56(c). Under FOIA,

9    EPA must demonstrate that withheld information is wholly or partially exempt from FOIA's

10   requirements. *Dep't of State v. Ray*, 502 U.S. 164, 173 (1991). "This burden does not shift even when,"

11   as here, "the requester files a cross-motion for summary judgment." *Prop. of the People, Inc. v. OMB*,

12   330 F. Supp. 3d 373, 380 (D.D.C. 2018) (citation omitted).

13   **V.**    **ARGUMENT**

14        **A.**    **EPA must produce its wrongfully withheld records.**

15        FOIA explicitly authorizes courts to enjoin agencies from unlawfully withholding information.

16   *See, e.g.,* 5 U.S.C. § 552(a)(4)(B); *In re Steele*, 799 F.2d 461, 465 (9th Cir. 1986). As discussed below,

17   EPA has improperly withheld a great deal of information, and the Court should order EPA to produce all

18   unlawfully withheld information forthwith. *See, e.g., EcoRights v. FEMA*, 2017 U.S. Dist. LEXIS

19   197451, at *32, 34 (declining to engage in *in camera* review of withheld records and ordering

20   production of all withheld records in full); *Columbia Riverkeeper v. U.S. Army Corps of Eng'rs*, No. 13-

21   01494, 2015 U.S. Dist. LEXIS 58475, at *1 (D. Or. May 5, 2015). However, as also discussed below, if

22   the Court is unable to determine whether EPA's withholdings are improper and does not simply order

23   EPA to produce the records in issue, the Court should review a representative selection of the records *in*

24   *camera. See, e.g.*, 5 U.S.C. § 552(a)(4)(B) (Court "may examine the contents of such agency records in

25   camera" to determine if they may be withheld); *ACLU of N. Cal. v. DOJ*, 880 F.3d 473, 485 (9th Cir.

26   2018); *S. Envtl. Law Ctr. v. CEQ*, 507 F. Supp. 3d 694, 701 (W.D. Va. 2020); *Dickstein Shapiro LLP v.*

27   *Dep't of Defense*, 730 F. Supp. 2d 7, 10-11 (D.D.C. 2010). The Court could then direct EPA to

28   extrapolate from that ruling to the remaining disputed records and to produce all wrongfully withheld

1   records within 14 days of the Court's order. *See EcoRights v. EPA*, No. 18-394, 2021 U.S. Dist. LEXIS

2   104760, at *3-4, 40-42 (N.D. Cal. June 3, 2021) (reviewing exemplars where EPA submitted boilerplate

3   *Vaughn* index, finding many withholdings improper, and ordering production of withheld material

4   within 14 days with ruling on exemplars as guidance). EPA could then submit a new *Vaughn* index a

5   week later for any records it continues to withhold. *See id.* This may be unavoidable for some records as

6   EPA has not limited its briefing and supporting materials to information actually in dispute, has withheld

7   much or all of the substance of many records, and has provided boilerplate and opaque assertions of

8   exemption and foreseeable harm in its materials, thereby frustrating review of some withholdings.

9   EcoRights proposes that, should the Court decide to undertake an *in camera* review, the Court use the

10  records discussed throughout this Cross-Motion and the attached Declaration of Stuart Wilcox for its

11  sample. *See, e.g.,* Wilcox Dec. ¶¶ 33, 43, 46, 54, 55, 65.

12           **B.      EPA fails to show foreseeable harm justifying its record withholdings.**

13           EPA has failed to show that disclosure of the withheld information here, which relates to limited,

14  fact-specific settlement relief in completed cases and to implementation of another agency's withdrawn

15  policies, would cause foreseeable harm. Instead EPA has continued to attempt to withhold this harmless

16  information behind implausible foreseeable harm arguments. In fact, releasing this information would

17  not interfere with EPA's functioning and would be beneficial to EPA as it would help illuminate the

18  wisdom of reversing these policies and going back to a more environmentally protective framework

19  where SEPs are available. In fact, it is EcoRights' understanding that EPA criticized these policies as

20  interfering with EPA's ability to reach enforcement settlements, a position that ultimately won the day.

21           Congress passed the FIA in 2016 after finding agencies to be engaged in a "'growing and

22  troubling trend' of invoking FOIA exemptions 'even though no harm would result from disclosure.'"

23  *Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.* ("*Investigative Reporting I*"), 436 F.

24  Supp. 3d 90, 104 (D.D.C. 2019) (quoting 162 Cong. Rec. H3717 (2016); S. Rep. No. 114-4, at 3). The

25  FIA creates a "presumption of openness" under FOIA by prohibiting agencies from withholding records,

26  even if they fall within a FOIA exemption, unless the agency "reasonably foresees that disclosure of the

27  record would harm an interest protected by" that exemption. *See, e.g., Judicial Watch v. Dep't of*

28

1    *Commerce* ("*Judicial Watch I*"), 375 F. Supp. 3d 93, 100 (D.D.C. 2019). Notably, this standard does not

2    allow record withholding "merely because public officials might be embarrassed by disclosure, because

3    errors and failures might be revealed, or because of speculative or abstract fears." *Judicial Watch v. DOJ*

4    ("*Judicial Watch II*"), No. 17-832, 2019 U.S. Dist. LEXIS 163473, at *7-8 (D.D.C. Sept. 24, 2019).

5    EPA has not met its burden to show that releasing the withheld records in issue would cause foreseeable

6    harm. Thus, EcoRights respectfully requests that the Court order production of all challenged records on

7    a finding of lack of foreseeable harm regardless of whether any exemption might otherwise apply. *See*

8    *EcoRights v. FEMA*, 2017 U.S. Dist. LEXIS 197451, at *16-17; *see also, e.g.,* Wilcox Dec. ¶¶ 63-64,

9    Exs. 31-33 (showing inconsistent, arbitrary redactions of uncontroversial material that could not cause

10   foreseeable harm).

11          First, the records at issue here relate only to completed government actions and/or routine

12   government matters that do not rise to the level of substantial policy decisions. Namely they relate to

13   DOJ's attempts to limit SEPs under the Trump Administration by a series of memoranda. However,

14   DOJ under the Biden Administration has formally revoked those memoranda and made clear that it

15   intends to chart a new path where use of SEPs is allowed. *See* Wilcox Dec. ¶¶ 28, 29. To the extent

16   records relate to individual cases, all of those cases have now been resolved and the portions of relief

17   discussed are fact-specific and often proposed by the violators themselves, rendering disruptive use of

18   this information by other violators impossible. *See* Wilcox Dec. ¶¶ 30, 35, 11 Exs. 16-18. As a result,

19   EPA's irrational stated concerns about harm from records related to these abandoned policies and

20   completed cases do not amount to the required foreseeable harm. *See Rosenberg v. Dep't of Defense*,

21   342 F. Supp. 3d 62, 79 (D.D.C. 2018); S. Rep. No. 114-4, at 8 (Wilcox Dec. ¶ 39) (explaining that

22   foreseeable harm will turn on the "age, content, and character" of the record in question); *Investigative*

23   *Reporting I*, 436 F. Supp. 3d at 107-08 (it is at least unclear that disclosure would harm agency where it

24   had already taken the action). Therefore, disclosure of the historical records EcoRights seeks would not,

25   "in the specific context of the agency action at issue, actually impede those same agency deliberations

26   going forward." *See Reporters Comm. for Freedom of the Press v. FBI*, No. 20-5091, 2021 U.S. App.

27   LEXIS 19762, at *33-34 (D.C. Cir. July 2, 2021).

28          Second, EPA's general, conclusory articulations of harm fall short. The D.C. Circuit recently

1  made clear that the foreseeable harm standard creates an "independent and meaningful burden"

2  requiring EPA to provide "a focused and concrete demonstration" of why disclosure would cause harm.

3  *See id.*; *Investigative Reporting I*, 436 F. Supp. 3d at 106 (agency must "'identify specific harms to the

4  relevant protected interests that it can reasonably foresee would actually ensue from disclosure of the

5  withheld materials' and 'connect[] the harms in [a] meaningful way to the information withheld.'")

6  (citation omitted); *Ctr. For Investigative Reporting v. Dep't of Interior* ("*Investigative Reporting II*"),

7  No. 18-1599, 2020 U.S. Dist. LEXIS 61201, at *10 (D.D.C. April 7, 2020) (agency must show

8  disclosure of the "*particular*" record will cause reasonably foreseeable harm) (emphasis in original).

9  "Generic, across-the-board articulations of harm," "boilerplate," and/or "nebulous articulations of harm

10  are insufficient." *See, e.g., NRDC v. EPA*, No. 17-5928, 2019 U.S. Dist. LEXIS 124353, at *2-4

11  (S.D.N.Y. July 25, 2019). EPA's analysis here fails.

12          EPA's conclusory allegations of foreseeable harm are vague, abstract, and fail to identify a

13  particularized harm from the disclosure linked, as it must be, to the information in the withheld record.

14  EPA's foreseeable harm arguments merely "restate[] th[e] broad justifications for the [exemptions and]

15  say[] nothing new about the harm of disclosure and fail[] to link the possibility of that harm to the"

16  withheld information. *Reporters Comm. for Freedom of the Press v. Customs & Border Prot.*, No. 18-

17  155, 2021 U.S. Dist. LEXIS 200240, at *22-23 (D.D.C. Oct. 18, 2021); *See, e.g.,* Wilcox Dec. ¶ 31. The

18  generic harms EPA has claimed here are virtually identical to those that have been rejected by numerous

19  courts. *See, e.g., EcoRights v. EPA*, 2021 U.S. Dist. LEXIS 104760; *Reporters Comm. v. FBI*, 2021 U.S.

20  App. LEXIS 19762, at *34-40; *Reporters Comm. v. CBP*, 2021 U.S. Dist. LEXIS 200240, at *19-23, 27-

21  28, 44-47; *Investigative Reporting I*, 436 F. Supp. 3d at 106. EPA's boilerplate recitations of the

22  purposes of the exemptions in its foreseeable harm arguments amount to an argument that, if an

23  exemption applies, disclosure would *per se* cause harm. This fails to give effect to the "independent and

24  meaningful burden" created by the FIA. *See, e.g., Reporters Comm.*, 2021 U.S. App. LEXIS 19762, at

25  *33-34; *Stone v. INS*, 514 U.S. 386, 397 (1995) ("When Congress acts to amend a statute, we presume it

26  intends its amendment to have real and substantial effect."). EPA's arguments do not vary from what it

27  would have said pre-FIA to justify redactions, which is not enough.

28

1       EPA's claims of harm are also too speculative with EPA arguing that disclosure of the

2  information in over 100 records "may" or "potentially" will result in confusion, not that it "will" result

3  in harm. *See, e.g.*, Wilcox Dec. ¶ 32. These speculative arguments *per se* fail because "[t]he question is

4  not whether disclosure could" cause harm, "but rather if it is reasonably foreseeable that it will … [the

5  FIA] requires more than speculation…" *Judicial Watch I*, 375 F. Supp. 3d at 101. EPA's "confusion"

6  arguments also fail because the records are either emails, which would not be confused for final policy

7  statements, or contain "markings that indicate they are drafts, [and] it is unlikely that they would be

8  mistaken for final agency policy." *Judicial Watch, Inc. v. DOJ* ("*Judicial Watch III*"), No. 19-800, 2020

9  U.S. Dist. LEXIS 178773, at *8 (D.D.C. Sep. 29, 2020); Dkt. 30-23 at 161-203, 207-210, 469-72, 478,

10  636, 641-655 (edited drafts withheld based on confusion concerns). EPA's repeated statements that its

11  "final position on settlement … is clearly memorialized in the final consent decree[s in the cases]"

12  further undercuts these alleged confusion concerns. Wilcox Dec. ¶ 33.[4]

13       EPA's failure to demonstrate foreseeable harm is particularly egregious given that EPA relies on

14  the DPP for withholding *every single disputed record*. *See generally* Dkt. 30-23. In passing the FIA,

15  "Congress was particularly concerned with increasing agency overuse and abuse of Exemption 5 and the

16  [DPP]." *Reporters Comm. v. FBI*, 2021 U.S. App. LEXIS 19762, at *32. Congress explained that the

17  DPP "is the most used privilege and the source of the most concern regarding overuse." *Investigative*

18  *Reporting I*, 436 F. Supp. 3d at 105 (citation omitted). EPA's blatant overuse of Exemption 5 here, and

19  especially the DPP, cannot be sanctioned consistent with the FIA and accompanying case law.

20       Finally, EcoRights' limitations on the areas of dispute here further undercut EPA's foreseeable

21  harm arguments because EPA claims harm will occur based on disclosure of information EcoRights

22  does not request be produced. *See* Wilcox Dec. ¶¶ 34-38. Disclosure of the information actually in

23  dispute would not cause foreseeable harm.

24     **C.**     **EPA improperly withholds every record at issue under FOIA Exemption 5.**

25         **1.**     **EPA improperly invokes the DPP for every record in dispute even though those**

26                 **records are neither predecisional nor deliberative.**

---

27  [4] Relatedly, as discussed in the sections addressing EPA's wrongful application of exemptions, EPA

28  repeatedly attempts to withhold information that is publicly available. However, it is impossible that
    EPA could suffer any foreseeable harm from release of information that is already public.

1         The Ninth Circuit has "defined the ambit of the [DPP] . . . narrowly." *Sierra Club v. U.S. Fish &*

2  *Wildlife Serv.*, 925 F.3d 1000, 1011 (9th Cir. 2019), *overruled in part on other grounds*, 141 S. Ct. 777

3  (2021)). To be withheld under the DPP, a record "must be *both* (1) 'predecisional' or 'antecedent to the

4  adoption of agency policy' and (2) 'deliberative,' meaning 'it must actually be related to the process by

5  which policies are formulated.'" *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1117 (9th Cir.

6  1988) (citation omitted, emphasis in original). The DPP only "protects from disclosure documents

7  generated during an agency's deliberations *about a policy*, as opposed to documents that *embody or*

8  *explain* a policy that the agency adopts." *U.S. Fish & Wildlife Serv. v. Sierra Club*, 141 S. Ct. 777, 783

9  (2021) (emphasis added); *see also, e.g., EcoRights v. EPA*, 2021 U.S. Dist. LEXIS 104760, at *7-8;

10 *Greenpeace v. NMFS*, 198 F.R.D. 540, 543 (W.D. Wash. 2000) (DPP "centrally concerned with

11 protecting the process by which *policy* is formulated…") (emphasis in original) (citation omitted).

12 "[O]nce a decision has been made, the deliberations are done" and records "reflecting a final agency

13 decision and the reasons supporting it" are not DPP-protected. *FWS v. Sierra Club*, 141 S. Ct. at 785-86

14 (citation omitted). Criticism of an existing policy or where that criticism is outside of the policy-creating

15 process would not be deliberative. Additionally, the DPP only applies to "significant policy decisions."

16 *See, e.g., Dominguez v. Schwarzenegger*, No. 09-2306, 2010 U.S. Dist. Lexis 94549, at *18 (N.D. Cal.

17 Aug. 25, 2010). Therefore, where a record does not embody recommendations concerning formulation

18 of a significant policy decision or where it only regards implementation, explanation, or application of

19 an existing policy, it is not exempt.

20                **e.  EPA improperly withholds Category 1 records under the DPP:**

21        EPA cannot withhold the only information in dispute, final SEP amounts, because these amounts

22 are in the publicly filed consent decrees for these cases. *See* Wilcox Dec. ¶ 30; *In re Sealed Case*, 121

23 F.3d 729, 741 (D.C. Cir. 1997) (disclosure of information waives DPP). EPA's contrary arguments rely

24 on information that is not in dispute in an attempt to withhold the disputed public information.[5]

25                **f.  EPA improperly withholds Category 2 records under the DPP:**

26

---

27 [5] That this information is public also defeats EPA's AWP, *see ACLU of N. Cal. v. DOJ*, 880 F.3d 473, 479, 491 (9th Cir. 2018), and ACP, *see United States v. Sanmina Corp. & Subsidiaries*, 968 F.3d 1107,

28 1116-17 (9th Cir. 2020), arguments. As a result, EcoRights does not further discuss Category 1.

1    Recommendations of "why EPA should or should not approve the SEP at issue" that were

2    accepted, *see* Wilcox Dec. Ex. 12, are neither predecisional nor deliberative as these records would

3    embody the final decision. *See FWS v. Sierra Club*, 141 S. Ct. at 783; Wilcox Dec. ¶ 47. EcoRights does

4    not request information related to settlement strategy and other topics EPA uses to bootstrap its

5    arguments here. *See, e.g.*, Dkt. 30-23 at 31. Relatedly, however, all records coming after these decisions

6    that discuss the SEP decision already reached would also not be predecisional or deliberative and must

7    be produced. *NWF v. USFS*, 861 F.2d at 1117. EPA's failure to identify the decision time for the SEPs

8    for each case, *i.e.* when EPA decided to accept the SEP proposal, makes it impossible to determine the

9    start time for this predecisional cutoff, so the Court should issue an order instructing EPA to identify this

10   date, and to release all withheld information in that decision and after that date. *See EcoRights v. EPA*,

11   2021 U.S. Dist. LEXIS 104760, at *40-42. In addition, EPA fails to provide the date for dozens of

12   records in this category, thereby objectively failing to demonstrate that they are predecisional. *See, e.g.*,

13   *Investigative Reporting I*, 2019 U.S. Dist. LEXIS 223077, at *17; *See* Dkt. 30-23 at 161-210.[6] Finally,

14   EPA redacts several records it shared outside the federal government. *See* Wilcox Dec. ¶ 48. This

15   outside disclosure precludes applying the DPP to these records. *See In re Sealed Case*, 121 F.3d at 741.[7]

16                    **g.  EPA improperly withholds Category 3 and 4 records under the DPP:**

17    EPA's disputed redactions under Categories 3 and 4 are not DPP exempt because the information

18   is neither predecisional nor deliberative. The specific decisions for the purpose of deciding whether the

19   material is predecisional are (1) the 2018 Sessions Memo, (2) EPA's 2015 SEP Policy, and (3) past

20   consent decrees that included SEPs. All of the challenged records post-date these decisions. *See NWF v.*

21   *USFS*, 861 F.2d at 1117; *see also, e.g.*, Dkt. 30-23 at 211-71 (all Category 3 and 4 records post-date the

22   2018 Sessions Memo, released November 7, 2018, or are undated).

23    A record that is not predecisional cannot be deliberative. *FWS v. Sierra Club*, 141 S. Ct. at 786.

24   However, even if that were not the case, these records are not deliberative. Records that relate to or are

25

26   _____

     [6] This failure also applies to dozens of records across all other categories of records of as well. *See* Dkt.
27   30-23 at 23-26 (Category 1); 228-39 (Category 3); 267-71 (Category 4); 465-82 (Category 5); 609-11
     (Category 6); 633-34 (Category 7); 636, 641-653, 655 (Category 8).
28   [7] That this information is not confidential also defeats EPA's AWP, *see ACLU of N. Cal. v. DOJ*, 880
     F.3d at 479, 491, and ACP, *see Sanmina*, 968 F.3d at 1116-17, arguments.

1   drafts of a briefing paper and talking points merely explain final decisions EPA or others have already

2   made and are not DPP exempt. *See, e.g., id.* at 783; *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 152

3   (1975); *Assembly of Cal U.S. Department of Commerce*, 968 F.2d 916, 920-21 (9th Cir. 2016); *Jordan v.*

4   *DOJ*, 591 F.2d 753, 774 (D.C. Cir. 1978); *see also EcoRights v. FEMA*, 2017 U.S. Dist. LEXIS 197451,

5   at *15 ("Exemption 5 does not protect . . . communications that promulgate or implement an established

6   policy of an agency.") (citation omitted). *Post hoc* records that "explain, justify, and implement" a

7   policy decision necessarily "were not created to help in the formulation of [] policies" they explain,

8   justify, or implement and thus are not DPP exempt. *See Fishermen's Finest, Inc. v. Gutierrez*, No. 07-

9   1574, 2008 U.S. Dist. LEXIS 53493, at *14 (W.D. Wash. July 15, 2008).

10          Relatedly, the decisions about what to include in these records are not part of the process for

11   making any identifiable agency policy decision. To be DPP exempt, records must necessarily "be

12   prepared to assist an agency decision-maker in arriving at a future particular decision" rather than

13   merely relating to "a continuing process of agency self-examination" or for "speculative or generalized

14   purposes[.]" *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 981 (9th Cir. 2009) (citations omitted); *see*

15   *also, e.g., EcoRights v. EPA*, 2021 U.S. Dist. LEXIS 104760, at *10, 17, 21-23 (rejecting attempt to

16   withhold records because they do not relate to formulating a particular policy decision). These records

17   were merely part of preparation for a meeting to discuss completed policy decisions.

18          Additionally, it appears that these records include purely factual material, such as policy history

19   and information recounting the factual characteristics or fate of a SEP in a then current enforcement

20   case, which is also not DPP protected. *See Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143, 1148

21   (9th Cir. 2008). Even if a portion of a record is subject to Exemption 5, the agency must disclose

22   segregable factual information. *See, e.g., id.* To show compliance with this duty, EPA must provide "a

23   detailed justification and not just conclusory statements," and "a blanket declaration that all facts are so

24   intertwined [as] to prevent disclosure under the FOIA does not constitute a sufficient explanation of

25   non-segregability." *See Our Children's Earth Found. v. NMFS*, 85 F. Supp. 3d 1074, 1087 (N.D. Cal.

26   2015) (citations omitted). EPA, however, has merely provided the very sort of conclusory assertions that

27   fail to meet an agency's burden for showing it has released all segregable factual information.

28          **h.   EPA improperly withholds Category 5 records under the DPP:**

P's Cross-Motion for Summary Judgment          13          Civil Case No. 3:20-cv-06898-SI

**Commented [CS1]:** Come back. Drop sep isn't dpp

1      EcoRights does not challenge the redactions in Category 5 records that contain discussion of

2  settlement strategy in specific enforcement cases. EcoRights disputes only redactions relating to: (1) the

3  effects of the 2018 Sessions Memo and 2019 SEP Memo on SEPs generally, (2) application of these

4  withdrawn Memoranda to specific completed cases, and (3) communications conveying or commenting

5  on a final decision that a SEP is or is not allowed in a given case and why. Records at issue include

6  those that post-date the 2018 Sessions Memo and redact information related to its effects on SEPs in

7  general, *see* Wilcox Dec. ¶¶ 69, 72-79; those that post-date the 2019 SEP Memo and redact information

8  about its effects on SEPs in general, *see id.* ¶¶ 70, 80-81; and those that convey a final decision on

9  whether a SEP will or will not be allowed in a specific case, *see id.* ¶¶ 71, 82-87. These records are *per*

10 *se* neither predecisional nor deliberative because they post-date the relevant decisions, the 2018 Sessions

11 Memo or the 2019 SEP Memo, or state or comment on the final decision. *See, e.g., NWF v. USFS*, 861

12 F.2d at 1117; *FWS v. Sierra Club*, 141 S. Ct. at 783; Dkt. 30-23 at 272-482 (all records post-date the

13 November 7, 2018, Sessions Memo or are undated); Dkt. 30-23 at 407-82 (many records post-date the

14 August 21, 2019, SEP Memo or are undated).

15              **i.    EPA improperly withholds Category 6 records under the DPP:**

16      Disputed Category 6 records include those that pertain to: (1) internal EPA communications

17 discussing application of the 2018 Sessions Memo to SEPs in general; (2) background materials for EPA

18 Assistant Administrator for Enforcement and Compliance Susan Bodine on EPA's SEP policy in

19 advance of a DOJ SEP briefing; (3) talking points for a meeting between Ms. Bodine and Acting

20 Associate Attorney General Jesse Panuccio; (4) an EPA follow-up note to Panuccio and memorandum to

21 Principal Deputy Attorney General Claire Murray; and (5) emails that contain final decisions on whether

22 to include SEPs in specific cases. *See* Wilcox Dec. ¶¶ 88-93; Dkt. 30-23 at 470-511, 514, 515, 525, 526,

23 533, 529, 537, 538, 569-71.

24      None of these records at issue are predecisional because they all post-date or embody the

25 relevant policy decisions: (1) the 2018 Sessions Memo, (2) EPA's 2015 SEP Policy Memo, and (3) past

26 consent decrees that included SEPs. *See NWF v. USFS*, 861 F.2d at 1117; Dkt. 30-23 at 485-553.

27 Additionally, much of the information EPA has withheld in Category 6 is not deliberative because it

28

1  merely explains or describes the 3 policy decisions and includes purely factual information regarding the

2  above. *See, e.g., FWS v. Sierra Club*, 141 S. Ct. at 783; *Pac. Fisheries*, 539 F.3d at 1148.

3  　　　EcoRights also challenges EPA's withholding of certain emails from August 19, 2019, including

4  *Vaughn* Numbers 561-64, on the grounds that "once a decision has been made, the deliberations are

5  done." *FWS v. Sierra Club*, 141 S. Ct. at 785-86 (citation omitted).  Though the emails pre-date the

6  official release of the 2019 SEP Memo by two days, they appear to convey DOJ's final decision about

7  SEPs, which was subsequently unveiled in the final version of the 2019 SEP Memo shortly thereafter.

8  　　　Finally, EcoRights challenges redaction of emails that discuss EPA's response to SEP policy

9  press inquiries. *See* Wilcox Dec. ¶ 93. The deliberative process privilege does not extend to draft press

10 statements that do not also formulate policy. *See, e.g., EcoRights v. EPA*, 2021 U.S. Dist. LEXIS

11 104760, at *23, 26-27, 28-29; *First Resort, Inc. v. Herrera*, No. 11-5534, 2014 U.S. Dist. LEXIS 34077,

12 at *12-14 (N.D. Cal. Mar. 10, 2014); *Chattler v. United States*, No. 07-4040, 2009 U.S. Dist. LEXIS

13 43304, at *4 (N.D. Cal May 12, 2009). Moreover, "[d]eliberations about how to present an already

14 decided policy to the public…are at the heart of what should be released under FOIA." *Nat'l Day*

15 *Laborer Org. Network v. Immigration & Customs Enf't Agency*, 811 F. Supp. 2d 713, 741 (S.D.N.Y.

16 2011). EPA cannot withhold these records.

17 　　　　　　**j.   EPA improperly withholds Category 7 records under the DPP:**

18 　　　EcoRights only challenges EPA's redaction of information relating to the effects of the Sessions

19 Memoranda on SEPs generally and whether these memoranda mandate dropping or instead allow SEPs

20 in specific cases. Because the disputed portions of these records relate only to implementation of the

21 Sessions Memoranda, the Memoranda form the specific decision for the purpose of deciding whether

22 material is predecisional. Every email that EPA has withheld post-dates both Sessions Memoranda,

23 thereby precluding these messages from being predecisional. *See NWF v. USFS*, 861 F.2d at 1117; Dkt.

24 30-23 at 612-32.[8] Additionally, records such as these that merely explain a decision already reached or

25 explain how a decision already reached is to be implemented, here the DOJ decisions stated in the

26 Sessions Memoranda and their effects on SEPs generally and whether the Memoranda specifically

27

28 [8] EPA failed to provide dates for *Vaughn* Numbers 617 and 618, but they are post-decisional to the 2017
Sessions Memo because EPA says they discuss its effects on SEPs generally. *See* Dkt. 30-23 at 633-34.

1  dictate inclusion or exclusion of SEPs in any given case, are not deliberative. *See, e.g., FWS v. Sierra*

2  *Club*, 141 S. Ct. at 783; Wilcox Dec. ¶¶ 94-100. Thus, EPA must segregate and produce those portions

3  of withheld records.

4             **k.  EPA improperly withholds Category 8 records under the DPP:**

5        EPA cannot withhold the portions of the outlines and drafts of the Senator Carper letter

6  regarding SEP policy, *see* Dkt. 30-23 at 636, 641-53, 655, because these records, all from 2018, are not

7  predecisional to the 2017 Sessions Memo discussed therein. *See NWF v. USFS*, 861 F.2d at 1117.

8  Additionally, these records are not deliberative as they were not part of the development of DOJ's 2017

9  Sessions Memo. *See NWF v. USFS*, 861 F.2d at 1118 (DPP's purpose is to facilitate discussion "within

10  agencies concerning *their* policies") (emphasis added). As with responses to press inquiries, drafting

11  communications to Congress does not by itself qualify for DPP exemption unless it is independently

12  deliberative to another significant policy decision. *See EcoRights v. EPA*, 2021 U.S. Dist. LEXIS

13  104760, at *22-23; *Chattler*, 2009 U.S. Dist. LEXIS 43304, at *4; *Herrera*, 2014 U.S. Dist. LEXIS

14  34077, at *12, 13-14. In fact, EPA admits that it "was not involved in the drafting of the DOJ Policy"

15  and that EPA's position in the letter is based on guidance DOJ "shared with EPA." *See* Wilcox Dec. Ex.

16  19 at 2. As a result, these records are not DPP exempt because they were not part of the policymaking

17  process and only explain another agency's policy. *NWF v. USFS*, 861 F.2d at 1117, 1118.

18        EPA's argument that it can withhold the email discussions related to SEP Policy for then-

19  upcoming Congressional testimony under the DPP, *see* Dkt. 30-23 at 637-40, 654, 656-60, fails for the

20  same reasons. Namely, these records only explain decisions another agency has already made. *See NWF*

21  *v. USFS*, 861 F.2d at 1118. Regardless, even if policy were being formulated, which it was not, EPA's

22  decision on the matter would have been settled when on September 6, 2019 Susan Bodine said the

23  testimony should be neutral and should say EPA continues to follow the 2015 EPA SEP Policy. *See,*

24  *e.g.,* Wilcox Dec. ¶ 104, Ex. 40. All withheld information comes after that, is thus necessarily not

25  predecisional, and therefore cannot be DPP exempt. *See NWF v. USFS*, 861 F.2d at 1117.[9]

26

27                      
[9] EPA also attempts to withhold records under category 8 related to drafting a "SEP issue paper." *See*
Dkt. 30-23 at 657-60. However, EPA's attempts to withhold this information under the DPP and ACP

28  fail for the same reasons as the other email discussions.

1    In addition, EPA failed to show it did not (1) formally or informally adopt the redacted material

2    as its final statement, or (2) actually use the material in its statement. Either will defeat the DPP. *See*

3    *Wilderness Soc'y v. Dep't of the Interior*, 344 F. Supp. 2d 1, 14 (D.D.C. 2004) (citation omitted).

4       **2.   EPA improperly invokes the ACP for every record at issue.**

5    "Not all communications with lawyers are privileged," and a record does not become privileged

6    merely because it was sent to a lawyer in connection with a request for legal advice. *See ACLU Found.*

7    *v. DOJ*, No. 19-290, 2021 U.S. Dist. LEXIS 181279, at *20-21 (N.D. Cal. Sep. 22, 2021) (citation

8    omitted); *OCE v. NMFS*, 85 F. Supp. 3d at 1088 (citations omitted). The ACP is limited to the following

9    circumstances: "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his

10   capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the

11   client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal

12   adviser, (8) unless the protection be waived." *Sanmina*, 968 F.3d at 1116. The ACP is "narrowly and

13   strictly" construed. *EcoRights v. EPA*, 2021 U.S. Dist. LEXIS 104760, at *29-31 (citation omitted).

14   "If the advice sought is not legal advice … then the privilege does not exist." *Id.* (citation

15   omitted). "[L]egal advice involves the interpretation and application of legal principles to guide future

16   conduct or to assess past conduct"—"[i]t requires a lawyer to rely on legal education and experience to

17   inform judgment." *Pritchard v. Cnty. of Erie*, 473 F.3d 413, 419 (2d Cir. 2007). "When an attorney is

18   consulted in a capacity other than as a lawyer, as (for example) a policy advisor, media expert, business

19   consultant, banker, referee or friend, that consultation is not privileged." *Id.* at 421. There is a vital

20   distinction between "advice that can be rendered only by consulting the legal authorities and advice that

21   can be given by a non-lawyer." *Id.* Thus, things like criticism of a policy would not be ACP privileged.

22   Where a communication is dual purpose, *i.e.* undertaken to provide legal advice and for another purpose,

23   the ACP only applies if the "primary purpose" of the communication was provision of legal advice. *In re*

24   *Grand Jury*, Nos. 21-55085, 21-55145, 2021 U.S. App. LEXIS 27420, at *5-12 (9th Cir. Sep. 13, 2021).

25   Furthermore, the ACP "protects only communications, and not underlying facts," and it does not extend

26   to "neutral, objective analys[i]s." *See Upjohn v. United States*, 449 U.S. 383, 396 (1981); *Coastal States*

27   *Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980).

28       **a.   EPA improperly withholds Category 2 records under the ACP:**

1         The information at issue, recommendations of "why EPA should or should not approve the SEP

2   at issue" that were accepted, will necessarily contain information that is not ACP exempt. For example,

3   much of this information will be factual, such as factual statement that SEPs are not allowed under the

4   Sessions Memoranda, descriptions of the factual characteristics of given SEPs, such as where they

5   would be located, what they would consist of, how they would affect the environment, and how much

6   they would cost, etc., as opposed to legal advice. *See Upjohn*, 449 U.S. at 396. Additionally, any records

7   that recount information provided to or from the defendants in these cases, in addition to anything that

8   was included in the consent decrees at issue, would be public information that fails the confidentiality

9   requirement for invocation of the ACP. *See Sanmina*, 968 F.3d at 1116-17.

10        **b.  EPA improperly withholds Category 3 and 4 records under the ACP:**

11         Withheld information in these records describing the EPA 2015 SEP Policy, past SEP decisions,

12   and application of the 2018 Sessions Memo is not ACP exempt. This redacted information is "neutral,

13   objective analys[i]s" of these policies and "underlying facts" to which the ACP does not extend. *See*

14   *Upjohn*, 449 U.S. at 396; *Coastal States*, 617 F.2d at 863. The ACP only protects communications

15   between attorneys and clients that are made for the purpose of giving legal advice. *Sanmina*, 968 F.3d at

16   1116. Because the "primary purpose" of the redacted material was not to provide legal advice but to

17   summarize the "[l]ong history of SEPs" and the "guard rails" that "DOJ and EPA have put in place...to

18   ensure that the SEP policy is not misused," the ACP does not apply. *See* Wilcox Dec. ¶ 60; *In re Grand*

19   *Jury*, 2021 U.S. App. LEXIS 27420, at *5-12.

20        **c.  EPA improperly withholds Category 5 records under the ACP:**

21         Withheld information in these records about the application of the 2018 Sessions Memo and

22   2019 SEP Memo to SEPs in general is not ACP exempt. Nor are the decisions that DOJ made about

23   whether a SEP was to be included in a given case. This redacted information is "neutral, objective

24   analys[i]s" of the 2018 Sessions Memo and "underlying facts" to which the ACP does not extend. *See*

25   *Upjohn*, 449 U.S. at 396; *Coastal States*, 617 F.2d at 863. The ACP only protects communications

26   between attorneys and clients that are made for the purpose of giving legal advice. *Sanmina*, 968 F.3d at

27   1116. Further, the information communicated must be kept confidential for the ACP to apply. *See id.* at

28   1116-17. However, for example, at least some of the information explaining how the 2018 Sessions

1    Memo was to be implemented, including in particular in the Houston case, has already been disclosed in

2    released EPA emails. Wilcox Dec. ¶¶ 75, 82. This non-confidential material is not ACP exempt.

3          **d.   EPA improperly withholds Category 6 records under the ACP:**

4            The redacted information at issue here includes explanations of EPA's 2015 SEP Policy, final

5    decisions on SEPs in particular cases, the legislative history pertinent to SEPs, and application of the

6    2018 Sessions Memo to decisions about SEPs and policy toward SEPs in general prior to the 2019 SEP

7    Memo. These communications are not ACP exempt because this is not legal advice. *Sanmina*, 968 F.3d

8    at 1116. This is instead the kind of "neutral, objective analys[i]s" and "underlying facts" to which the

9    ACP does not extend. *See Upjohn*, 449 U.S. at 396; *Coastal States*, 617 F.2d at 863. Further, the ACP

10   does not apply to the records where EPA attorneys are attempting to spin statements for the press

11   because such advice could be, and typically is, given by non-lawyers. *See Pritchard*, 473 F.3d at 419,

12   421. Finally, attorney conversations conveying basic information about EPA's 2015 SEP Policy, past

13   consent decrees with SEPs, and how the 2018 Sessions Memo was being applied prior to the 2019 SEP

14   Memo are not ACP because that information is already publicly available. *See Sanmina*, 968 F.3d at

15   1116-17; Wilcox Dec. ¶¶ 89-90.

16         **e.   EPA improperly withholds Category 7 records under the ACP:**

17           The only Category 7 information at issue is related to implementation of the Sessions

18   Memoranda, including segregated statements about general application from discussions of specific

19   cases, and whether the Memoranda dictates acceptance or rejection of SEP proposals in specific cases.

20   As a result, this information, which would merely be parroting or stating how to implement DOJ's

21   policies, would not constitute legal advice. *See id.* at 1116. This is akin to factual assertions as it merely

22   says what the policy was and perhaps gives a personal, not legal, opinion on whether it was unwise or

23   unhelpful. *See Upjohn*, 449 U.S. at 396. Copying an attorney on these communications also does not

24   render non-exempt material within the ACP. *See, e.g., Iowa Pac. Holdings v. AMTRAK*, No. 09-2977,

25   2011 U.S. Dist. LEXIS 45879, at *16 (D. Colo. Apr. 21, 2011).

26         **f.   EPA improperly withholds Category 8 records under the ACP:**

27           The final Senator Carper letter includes only general, high level, not case-specific discussion,

28   and mostly defers even general questions to DOJ. Wilcox Dec. Ex. 19. In fact, EPA explicitly says,

1    "consistent with longstanding policy, we are unable to include information about ongoing cases." *Id.* at

2    1. As a result, and contrary to EPA's assertions, none of the information included in this letter, or the

3    materials used to produce it that EPA attempts to withhold, are ACP exempt. *See Sanmina*, 968 F.3d at

4    1116. Further, EcoRights' limitation of its dispute to information regarding SEPs eliminates EPA's

5    argument that these records cover discussion of "information requests, tracking of Notices of Violation,

6    [and] Consent Decrees lodged under the previous administration." *See, e.g.,* Dkt. 30-23 at 636.

7         EPA is also incorrect that emails discussing upcoming congressional testimony are ACP exempt

8    because the discussions here relate only to factual information, EPA's historical use of SEPs, *see, e.g.,*

9    Wilcox Ex. 40 at 3, and to public relations/messaging regarding DOJ's 2019 SEP Policy. *See, e.g., id.*;

10   *Upjohn*, 449 U.S. at 396; *Pritchard*, 473 F.3d at 421. Additionally, context shows that some of this

11   information is not ACP exempt because legal advice was not sought and provided. For example, EPA

12   redacts an entire email that EPA's attorney responds to with only "Lol!" Wilcox Dec. Ex. 41.

13         **3.   EPA improperly invokes the AWP for hundreds of records.**

14         The AWP is narrowly construed, and not all materials prepared by attorneys, including

15   documents that can serve a non-adversarial purpose, qualify as attorney work product. *See ACLU of N.*

16   *Cal. v. DOJ*, 880 F.3d at 485; *see, e.g., Elec. Frontier Found. v. DOJ*, No. 15-03186, 2016 U.S. Dist.

17   LEXIS 177630, at *27, 29 (N.D. Cal. Dec. 22, 2016) ("the Government cannot satisfy its burden of

18   proof by relying on a mere recitation of the elements [of the attorney work product doctrine] . . . if the

19   agency were allowed to withhold any document prepared by any person in the Government with a law

20   degree simply because litigation might someday occur, the policies of the FOIA would be largely

21   defeated."); *Wilkinson v. Chao*, 292 F. Supp. 2d 288, 294 (D.N.H. 2003). The AWP protects only

22   records prepared "because of" litigation. *Sidibe v. Health*, No. 12-04854, 2018 U.S. Dist. LEXIS 20350,

23   at *5-6 (N.D. Cal. Feb. 7, 2018) (citation omitted). This is because the "core purpose" of the AWP is to

24   "encourage effective legal representation *within the framework of the adversary system…*" *ACLU of N.*

25   *Cal. v. DOJ*, 880 F.3d at 486 (citation omitted, emphasis in original). As a result, records "prepared in

26   the ordinary course of business" or that would have been created in "substantially similar form"

27   irrespective of the litigation are not AWP. *Id.*; *Sidibe*, 2018 U.S. Dist. LEXIS 20350, at *6 (citation

28   omitted). Things like criticism or explanation of an existing policy thus would not be AWP.

1  Furthermore, only portions of records that present "original analysis—particularized arguments,

2  strategies, or tactics generated in anticipation of litigation" may be withheld under the AWP, not any

3  portions that are "purely descriptive" or that are "already incorporated in public documents." *ACLU of*

4  *N. Cal. v. DOJ*, 880 F.3d at 479, 488. "[G]eneric legal material" "concerning new legal developments—

5  essentially, continuing legal education messages"—are not AWP, and neither are "materials serving no

6  cognizable adversarial function." *Id.* at 486, 487-88 (citation omitted). Agencies must also segregate and

7  produce portions of records containing factual material that is not subject to the AWP. *Id.* at 488; *Sidibe*,

8  2018 U.S. Dist. LEXIS 20350, at *5. EPA only claims the AWP applies to Categories 1, 2, 3, 5, and 7,

9  not to Categories 4, 6, and 8. Dkt. 30 at 8.

10          **a.   EPA improperly withholds Category 2 records under the AWP:**

11          The information at issue, recommendations "why EPA should or should not approve the SEP at

12  issue" that were accepted, necessarily includes descriptive and factual information and/or information

13  included in public documents, including consent decrees. This is not the "particularized arguments,

14  strategies, or tactics generated in anticipation of litigation" that are AWP exempt. *See ACLU of N. Cal.*

15  *v. DOJ*, 880 F.3d at 479, 488. Additionally, statements about the ability to use SEPs based on DOJ

16  policy at the time, "new legal developments," and whether those policies are wise or advisable are not

17  AWP and must be produced. *See id.* at 486, 487-88; *Sidibe*, 2018 U.S. Dist. LEXIS 20350, at *5.

18          **b.   EPA improperly withholds Category 3 records under the AWP:**

19          Redacted material in the emails and talking points that describe, for example, EPA's 2015 SEP

20  Policy, SEPs included in past settlements, and application of the 2018 Sessions Memo to SEPs in

21  general is not AWP protected because it was not included in the talking points for an adversarial

22  purpose, but rather to provide DOJ with background information on past use and benefits of SEPs.

23  *ACLU of N. Cal. v. DOJ*, 880 F.3d at 485-86. It is descriptive information and "generic legal material,"

24  not original legal analysis. *Id.* at 479, 488. Indeed, this is supported by the fact that EPA has shared its

25  understanding of the EPA 2015 SEP Policy and the 2018 Sessions Memo publicly, and its past consent

26  decrees are likewise publicly available. *See id.* at 479, 491.

27          **c.   EPA improperly withholds Category 5 records under the AWP:**

28

1    As discussed above, EcoRights limited its dispute of material related to the 2018 Sessions Memo

2  and 2019 SEP Memo to information relating to the effects of the Memoranda on SEPs generally and

3  whether the 2019 SEP Memo and Memoranda dictated inclusion or exclusion of SEPs in particular

4  cases. Redacted material that describes how the Memoranda apply to SEPs in general is not original

5  legal analysis protected by the AWP. *See ACLU of N. Cal. v. DOJ*, 880 F.3d at 488. Additionally, EPA

6  has shared its reading of the effects of the Memoranda on its ability to use SEPs publicly, depriving the

7  information of AWP protection. *See id.* at 479, 491. EcoRights has also limited its dispute regarding

8  case-specific SEP information to only information conveying a final decision on whether and why a SEP

9  will or will not be included in a consent decree resolution of a specific case. This is also not original

10  legal analysis protected by the AWP. As a result, the only information requested with regard to those

11  records is descriptive information, not original legal analysis, some of which would be publicly available

12  in the case's consent decree, and is thus not AWP protected. *See id.* at 479, 491.

13    **d.  EPA improperly withholds Category 7 records under the AWP:**

14    As a preliminary matter, many of the redacted communications were not authored by an attorney.

15  *See, e.g.,* Wilcox Dec. ¶ 101. Additionally, as discussed above, EcoRights only requests production of

16  redacted information relating to the effects of the Sessions Memoranda on SEPs generally and whether

17  the Memoranda dictates acceptance or rejection of SEP proposals in specific cases. As a result, the only

18  information requested is factual or descriptive information constituting "generic legal material"

19  "concerning new legal developments" or information that does not involve any independent legal

20  analysis; such material is not AWP exempt. *See ACLU v. DOJ*, 880 F.3d at 479, 487-88; Wilcox Dec. ¶¶

21  94-100. That this information may criticize the SEP policies or comment on whether they are unwise

22  does not render this AWP. Finally, EPA has shared its reading of the effects of the Sessions Memoranda

23  on its ability to use SEPs publicly, indicating that this general information, devoid of specific litigation

24  context is not subject to the AWP. *See ACLU of n. Cal. v. DOJ*, 880 F.3d at 479, 487.

25    **D.    Declaratory judgment should issue that EPA violated FOIA's deadlines.**

26    EPA violated 5 U.S.C. § 552(a)(6)(A)(i) by failing to make a valid final determination on the

27  FOIA Request within 20 working days. EcoRights has *per se* been injured by EPA's egregious 11 month

28  delay in stating its response to the FOIA Request. *See Fed. Elec. Comm'n v. Akins*, 524 U.S. 11, 21

1   (1998) (a "plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must

2   be publicly disclosed pursuant to a statute"); *Gilmore*, 33 F. Supp. 2d at 1189 (agency's failure to

3   process FOIA request in a timely manner is itself an injury). EcoRights is thus entitled to declaratory

4   judgment that EPA violated FOIA by failing to heed FOIA's response deadlines. *See, e.g., EcoRights v.*

5   *FEMA*, 2017 U.S. Dist. LEXIS 197451, at *30-32; *Long v. IRS*, 693 F.2d 907, 910 (9th Cir. 1982)

6   ("unreasonable delays … violate the intent and purpose of the FOIA, and the courts have a duty to

7   prevent these abuses").

8         EPA also failed to "promptly" produce the responsive records as required by 5 U.S.C. §

9   552(a)(3)(A). Indeed, EPA's *initial* production on the FOIA Request took place almost seven months

10  after submission. Wilcox Decl. ¶¶ 2, 13. Thereafter, EPA eventually purported to make its final

11  production of records, but then made additional productions right up until the day before filing its

12  summary judgment motion, approximately two years after EcoRights submitted the FOIA Request. *Id.*

13  ¶¶ 2, 14, 16-17, 20-22, 24. EcoRights is thus entitled to declaratory judgment that EPA violated FOIA's

14  prompt production standard. *See CREW v. FEC*, 711 F.3d at 188; *Long*, 693 F.2d at 910.

15      **E.**    **The Court should issue declaratory and injunctive relief to remedy EPA's pattern**

16              **or practice of violating FOIA.**

17        EPA's long delay in producing all non-exempt, responsive records here is part of a broader

18  pattern or practice of EPA FOIA violations. The Ninth Circuit has recognized that pattern or practice

19  claims are cognizable for, *inter alia*, agency unreasonable delays in responding to FOIA requests. *See*

20  *Hajro v. Citizenship & Immigration Servs.*, 811 F.3d 1086, 1103 (9th Cir. 2016) (citations omitted).

21  These claims address the problem where "an agency *policy or practice* will impair the party's lawful

22  access to information in the future." *Id.* (citations omitted, emphasis in original); *see also Nightingale v.*

23  *Citizenship & Immigration Servs.*, 507 F. Supp. 3d 1193, 1207 (N.D. Cal. 2020) ("informal agency

24  conduct" is enough). EPA's practice is currently that it ignores FOIA's mandatory deadlines; produces

25  records and a final determination much later (often years later); then, in response to litigation, often

26  produces additional wrongfully withheld records; and then still has to be forced by court order to

27  produce the final wrongfully withheld records. *See* Evenson Dec. ¶¶ 6, 9-12; Sproul Dec. ¶¶ 3-5;

28

1   Beaman Dec. ¶¶ 5-12; Wilcox Dec. Ex. 42 ¶¶ 7, 9-14; Wilcox Dec. Ex. 43 ¶¶ 8-70; Wilcox Dec. Ex. 44

2   ¶¶ 11-20; Wilcox Dec. Ex. 45 ¶¶ 8-14. This leads to years of delay and concomitant harm to EcoRights.

3        EcoRights meets the standing requirements for bringing a pattern or practice claim. First,

4   EcoRights has submitted evidence in the form of "specific facts" that it "has been subjected to a FOIA

5   violation more than once" and "affidavits of people similarly situated to [EcoRights] who were also

6   harmed by the pattern or practice," either of which on its own would suffice, showing that EPA's delay

7   here is not merely an isolated event. *See Hajro*, 811 F.3d at 1104 (citations omitted); Evenson Dec. ¶¶ 6,

8   9-12; Sproul Dec. ¶¶ 3-5; Beaman Dec. ¶¶ 5-12; Wilcox Dec. Ex. 42 ¶¶ 7, 9-14; Wilcox Dec. Ex. 43 ¶¶

9   8-70; Wilcox Dec. Ex. 44 ¶¶ 11-20; Wilcox Dec. Ex. 45 ¶¶ 8-14. Second, EcoRights, the FOIA

10  requester here, has shown that it "has not received timely FOIA responses in violation of the statute" for

11  this and other FOIA requests submitted to EPA, which is "sufficient injury under FOIA." *See Hajro*, 811

12  F.3d at 1104-05 (citations omitted); Evenson Dec. ¶¶ 9-11; Wilcox Dec. ¶¶ 2-26. Third, EcoRights has

13  identified specific future FOIA requests it intends to submit in 2022 and a broader intention to continue

14  submitting FOIA requests into the future, which is sufficient to support its standing to bring this claim.

15  *Hajro*, 811 F.3d at 1107 (citations omitted); *Animal Legal Def. Fund v. Dep't of Agric.*, 933 F.3d 1088,

16  1092-93 (9th Cir. 2019) (likelihood advocacy organization will submit more FOIA requests is enough to

17  meet third prong); Evenson Dec. ¶¶ 5-8. Additionally, EPA has caused this harm and the harm would be

18  redressed by the requested order from this Court. *See, e.g., Ctr. for Biological Diversity v. U.S. Fish &*

19  *Wildlife Serv.*, 807 F.3d 1031, 1043 (9th Cir. 2015).

20       The above information also establishes the merits of EcoRights' pattern or practice claim. Both

21  EcoRights and others have experienced pervasive delays in EPA responding to FOIA requests well

22  beyond statutory deadlines. *See, e.g., Nightingale*, 507 F. Supp. 3d at 1201-02. Indeed the delays

23  EcoRights has identified here are generally speaking much longer than those at issue in *Our Children's*

24  *Earth Found. v. NMFS*, No. 14-1130, 2015 U.S. Dist. LEXIS 143392, at *27 (N.D. Cal. Oct. 21, 2015)

25  (noting "a history of late responses, ranging but not limited to 4 days, 18 days, 51 days, 9 months, 10

26  months, and ongoing.") where the court found the agency had an unlawful pattern or practice of

27  violating FOIA. *See* Evenson Dec. ¶¶ 9-11; Wilcox Dec. ¶¶ 2-26. Additionally, EPA's long FOIA

28  backlog and near complete failure to make determinations within statutory deadlines continues. *See*

1   *Nightingale*, 507 F. Supp. 3d at 1201-03; Wilcox Dec. ¶ 110. These facts are sufficient to prove EPA's

2   unlawful pattern or practice of FOIA violation.

3        Finally, in addition to declaratory relief, *see, e.g., Nightingale*, 507 F. Supp. 3d at 1207, the

4   Court should grant injunctive relief. Injunctive relief is warranted where there is "a probability that

5   alleged illegal conduct will recur in the future." *Long v. IRS*, 693 F.2d 907, 909 (9th Cir. 1982). The

6   "prime consideration" in this analysis, the effect of nondisclosure of requested records on the public, is

7   that EPA's actions will hamper EcoRights' ability to enforce environmental laws and be a public

8   watchdog over EPA as it carries out its mission. *Id.*; Evenson Dec. ¶¶ 2-3, 5-8. This, along with the

9   likelihood of recurrence of EPA's "prolonged [FOIA] delays" that have "repeatedly hindered"

10   EcoRights' FOIA requests, weighs in favor of granting injunctive relief. *Id.*; *see also generally* Evenson

11   Dec.; Wilcox Dec. ¶¶ 2-26; *Landmark Legal Found. v. EPA*, 82 F. Supp. 3d 211, 227-28 (D.D.C. 2015)

12   ("Despite prior admonitions from this Court and others, ... EPA continues to demonstrate a lack of

13   respect for the FOIA process."). EPA has continued to violate FOIA by large margins and has failed to

14   show voluntary actions sufficient to avoid this harm in the future. Because EcoRights has stated clear,

15   concrete intentions to continue requesting records under FOIA from EPA in the future, EcoRights

16   requests that the Court order EPA to respond to all future FOIA requests and appeals by EcoRights in

17   accord with the deadlines imposed by FOIA, *see* 5 U.S.C. §§ 552(a)(3)(A), (a)(6)(A), (a)(6)(C)(1), and

18   to cease its practice of withholding records that are not subject to FOIA exemption and/or the disclosure

19   of which would not cause foreseeable harm. *See, e.g., Nightingale*, 507 F. Supp. 3d at 1211 (N.D. Cal.

20   2020).

21                  **CONCLUSION**

22        For the foregoing reasons, EcoRights respectfully requests the Court grant its Cross-Motion and

23   provide its requested declaratory and injunctive relief.

24   Date: December 17, 2021          Respectfully submitted,

25

26                    */s/ Christopher Sproul*
                         Christopher Sproul

27                       Attorney for Plaintiff

28